***NOT FOR PUBLICATION***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| A'DALE FLEMMING, | : | |
| | : | Civil Action No. 11-2561 (FLW) |
| Plaintiff, | : | |
| | : | |
| v. | : | OPINION |
| | : | |
| THE COUNTY OF MERCER, et al., | : | |
| | : | |
| Defendants. | : | |

**WOLFSON, District Judge:**

Plaintiff A'dale Flemming ("Plaintiff"), by and through counsel Grace S. Power, Esq. and Christopher Eugene Torkelson, Esq., filed the instant Complaint, alleging that Defendants the County of Mercer ("County"), Charles Ellis ("Warden"), Warden of the Mercer County Corrections Center ("MCCC"), and certain unnamed corrections officers of MCCC (collectively referred to as "Defendants"), are liable to Plaintiff for violations of his Eighth Amendment rights pursuant to 18 U.S.C. § 1983, and other state common law claims. In the instant matter, Defendants move for summary judgment ("Motion"), arguing that Plaintiff had failed to make a sufficient showing to establish the elements of his § 1983 claims against Defendants. For reasons stated below, the Court grants the Motion and dismisses the Complaint in its entirety.

**I.      FACTUAL BACKGROUND**

For the purposes of this Opinion, the Court construes all facts most favorable to the non-moving party. On May 14, 2009, while Plaintiff was an inmate at MCCC, Plaintiff, a member of the gang Crips, was attacked by other Crips inmates, Chelsy White ("White") and Daniel Inman ("Inman"). (Plaintiff's Statement of Material Facts ("Pl. Facts"), ¶ 1.) Plaintiff contends that

White and Inman initiated the fight by pouring hot coffee on Plaintiff. Upon hearing the commotion, Officer Kirby-Jones responded and called a Code 3, which was an indication that there was a fight between inmates; Officer Kirby-Jones arrived on the scene within 60 seconds. (Defendants' Statement of Material Facts ("Def. Facts"), ¶ 3.) The officer was unable to stop the fight herself. (Pl. Facts, ¶ 9.) However, Officers Waters and Tucker arrived at the scene within 30 seconds after Officer Kirby-Jones, and they were able to subdue the inmates. (Def. Facts, ¶ 8; Pl. Facts, ¶ 9.) Plaintiff suffered serious injuries as a result of the physical altercation. (Pl. Facts, ¶ 2.)

Prior to the instant action, earlier in 2009, there was a large scale fight at MCCC, wherein members of the gang group Crips had altercations with other unspecified inmates in the general population. (Response, Ex. 2 (Deposition of Officer Kirby-Jones), at 29:1-21.) Plaintiff, White, and Inman were involved in that incident. (Pl. Facts, ¶¶ 3, 10.) After the incident, Plaintiff maintains that a de-facto policy was instituted by MCCC to segregate Crips members from other inmates. *Id.*, ¶ 11. In that connection, according to Plaintiff, Defendants were also able to ascertain that "sets," or sub-groups, existed within Crips. *Id.*, ¶ 3. Defendants identified Plaintiff as a member of the set "Rollin 60s," and White as a member of "52 Hoover." *Id.*, ¶¶ 3-4. Inman was not identified with any gang set. *Id.*, ¶ 5.

On May 4, 2011, Plaintiff filed the instant Complaint, alleging that Defendants violated his Eighth Amendment rights; Plaintiff also asserted various other state law tort claims against Defendants.[1] (Compl., ¶ 1.) On November 20, 2014, Defendants filed the instant Motion.

---

[1] Plaintiff's Complaint is inartfully drafted, and therefore, the causes of action asserted in the Complaint are difficult to ascertain. Because the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, *see infra*, the Court need not delineate the specific state law claims that Plaintiff appears to have asserted.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248.  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 447 U.S. at 255); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002).

The burden of establishing that no "genuine issue" exists is on the party moving for summary judgment. *Celotex*, 477 U.S. at 330.  "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." *Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001).  The non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005) (quotations omitted).  Under *Anderson*, Plaintiffs' proffered evidence must be sufficient to meet the substantive evidentiary standard the jury would have to use at trial.  477 U.S. at 255.  To do so, the non-moving party must "go beyond

the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quotations omitted); *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

### III. DISCUSSION

A plaintiff can pursue a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Thus, to state a claim for relief under § 1983, a plaintiff must establish, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *Am. Mfrs. Mut.*

*Ins. Co. v. Sullivan*, 526 U.S. 40, 50-1 (1999); *Morrow v. Balaski*, 719 F.3d 160, 166-7 (3d Cir. 2013).

### A. Failure to Protect

The Complaint alleges that Defendants violated Plaintiff's Eighth Amendment rights by (1) allowing prisoners access to items easily converted to weapons: (2) failing to properly screen and segregate inmates known to have acted violently in the past; (3) failing to provide sufficient staff at the unit where Plaintiff was housed; (4) failing to follow its established safety procedures; (5) failing to provide necessary and appropriate security measures; (6) failing to develop and implement a classification system and corresponding housing plan for inmates at the Mercer County Corrections Center; and (7) failing to provide appropriate personnel necessary for the safety, welfare and protection of Plaintiff. The Court construes Plaintiff's claims as violations of the Eighth Amendment for failure to protect.

The Eighth Amendment to the United States Constitution prohibits a State from inflicting "cruel and unusual punishments" on those convicted of crimes. *Rhodes v. Chapman*, 452 U.S. 337 (1981). The Supreme Court has construed the Eighth Amendment as prohibiting "conditions" that involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime warranting imprisonment. *Id.* at 347. The cruel and unusual punishment standard is not static, but is measured by "the evolving standards of decency that mark the progress of a maturing society." *Id.* at 346 (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1956)). To state a claim under the Eighth Amendment, an inmate must satisfy both objective and subjective elements. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The objective element questions whether the deprivation of a basic human need is sufficiently serious; the subjective component asks whether the officials acted with a sufficiently

culpable state of mind.  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  The objective component is contextual and responsive to "contemporary standards of decency."  *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).  The subjective component follows from the principle that "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'"  *See Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 297 (internal quotation marks, emphasis, and citations omitted)); *Rhodes*, 452 U.S. at 345.  What is necessary to establish an unnecessary and wanton infliction of pain varies according to the nature of the alleged constitutional violation.  *Hudson*, 503 U.S. at 5.

In the context of a failure-to-protect claim, the inmate must show that he is "incarcerated under conditions posing a substantial risk of harm," *Farmer*, 511 U.S. at 833, and that prison officials knew of and disregarded the excessive risk to inmate safety.  *Id.* at 837.  "A pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror."  *Riley v. Jeffes*, 777 F.2d 143, 147 (3d Cir. 1985).  "Whether . . . prison official[s] had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a fact finder may conclude that . . . prison official[s] knew of a substantial risk from the very fact that the risk was obvious."  *Farmer*, 511 U.S. at 842.  Moreover, if a defendant had knowledge of prior incidents of obvious harm, but simply ignored them, that is sufficient to show both the objective and subjective elements of a failure-to-protect claim.  *See Farmer*, 511 U.S. at 842 (holding that plaintiff can establish a failure-to-protect claim by showing "a substantial risk of [harm that was] longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official [] had been exposed to information concerning the risk"); *Liles v. Camden Cnty. Dep't of Corr.*, 225 F. Supp. 2d 450, 463 (D.N.J. 2002); *Ingalls v. Florio*, 968 F. Supp. 193, 199 (D.N.J.

1997) ("[T]he chronologically earlier instances of assault may reasonably be considered by a jury as indicating a serious risk which defendants did not act to eliminate").

Here, Plaintiff contends that Defendants placed him in substantial risk of harm by (1) allowing inmates to have hot coffee, which can be converted into a weapon; (2) not sufficiently staffing the facility with adequate personnel to stop the attack on Plaintiff; and (3) failing to establish proper procedures against a *known* risk of harm, such as segregation of inmates who are substantially likely to be aggressive toward one another. The Court finds that Plaintiff has failed to proffer sufficient evidence to show a genuine issue of material fact that there was a substantial risk of harm for any of these three categories.

With regard to the hot coffee, the mere fact that Defendants allowed inmates to consume hot beverages, which was not an unreasonable action in itself, did not place Plaintiff in substantial harm. Short of denying access to hot liquids to *all* inmates for any reason, there was simply nothing Defendants could have done to eliminate the minor risk that someone may pour hot liquid on another inmate; to disallow the consumption of hot coffee, or any hot liquid, would be irrational. Indeed, there is also no evidence that White and Inman had used hot coffee as their "weapon of choice" in the past, therefore potentially providing notice to Defendants of similar actions by these inmates. Permitting inmates to consume hot coffee simply does not create a substantial risk of harm rising to the level of a constitutional violation. *See Best v. Essex Cnty, N.J. Hall of Records*, 986 F.2d 54, 57 n.7 (3d Cir. 1993) (holding that coffee urn, provided to inmates for "benign purposes and yet almost necessarily available to inmates," was not a substantial risk of harm).

With regard to adequate staffing, there is no evidence demonstrating that staffing was so inadequate that it constituted a substantial risk of harm *at the time of Plaintiff's attack*. First, Plaintiff cannot merely point to his own incident in which he claims there was inadequate staffing

7

to prevent *his* harm as proof that there must have been an existing substantial risk of harm that led to his attack; this is not an adequate proof of causation. *See Hamilton v. Leavy*, 117 F.3d 742, 747 (3d Cir. 1997) ("[A] showing that there was an excessive risk to [plaintiff's] safety is alone insufficient to preclude summary judgment"); *Heine v. Receiving Area Pers.*, 711 F. Supp. 178, 184 (D. Del. 1989) ("To imply that a risk of [harm] existed in 'thin air' in the absence of knowledge of such a specific risk by prison officials would necessarily require them to monitor every single prisoner twenty-four hours a day to in order to insure his safety"). The record shows, which Plaintiff does not dispute, that one officer arrived at the scene within 60 seconds of the attack, and two more arrived 30 seconds. Without more, officers responding to a fight within 60 to 90 seconds after it has started is not objectively unreasonable and did not create a substantial risk of harm rising to the level of a constitutional violation.

Plaintiff could have shown the existence of a substantial risk of harm had Plaintiff proffered evidence that Defendants had access to information that staffing was inadequate to prevent harm to other inmates. *See Robinson v. Johnson*, 449 F. App'x 205, 208 (3d Cir. 2011) (holding that a substantial risk of harm can be established if prison officials had access to information demonstrating that the existing practices exposed inmates to substantial risk of harm). However, Plaintiff did not do so. Indeed, Plaintiff presented no evidence that Defendants had prior knowledge, or there was any information showing, that staffing was inadequate in the prison at any time before the subject incident. In light of the circumstances, the Court finds that Plaintiff has failed to show a genuine issue of material fact that a substantial risk of harm existed due to inadequate staffing.

Likewise, with regard to failing to implement adequate procedures, Plaintiff does not establish a substantial risk of harm. Other than Plaintiff's own attack, Plaintiff points to only one

8

incident suggesting a risk of harm – the 2009 incident in which Crips members were involved in a large scale "fight" with other unspecified inmates in the general population. In order to prevent further similar incidents, Plaintiff asserts that a de-facto policy was created by Defendants to segregate Crips members from other inmates.[2] (Deposition of Officer Kirby-Jones, at 29:1-6.) However, that policy is not what Plaintiff advances as inadequate or improper. Instead, what Plaintiff contends is that this de-facto policy was not sufficiently comprehensive; that is, Defendants did not implement a policy to separate "sets" within Crips members that were hostile to each other; specifically in Plaintiff's case, Plaintiff suggests that Defendants should have separated the "Rollin 60s" from the "52 Hoover." According to Plaintiff, the lack of policy to segregate different "sets" created the substantial risk of harm. The Court disagrees.

Again, beyond Plaintiff's own incident, Plaintiff does not point to any evidence demonstrating that there were prior incidents or attacks between the members of "Rollin 60s" and "52 Hoover." While Plaintiff refers to the 2009 large scale fight as support, at best, that incident gave notice to Defendants that there was a substantial risk of harm of physical altercation between Crips members and other inmates. The evidence shows, and Plaintiff does not dispute, that Defendants took measures to prevent the Crips from fighting with other non-Crips inmates. However, fatal to Plaintiff's case is the fact that all three inmates involved in the instant matter – Plaintiff, White, and Inman – were members of the Crips and therefore, they were not segregated

---

[2] Defendants, in their reply brief, argued that "[t]he Plaintiff has not provided any case law supporting their theory of a 'de facto' policy. Nonetheless the argument fails because the County in fact did have a written policy (SOP 520) on 'security threat groups/gangs policy and procedure.'" (Def. Reply Brief, at 2.) However, it is unclear, and Defendants do not explain, why the written policy negates Plaintiff's assertion that a de-facto policy existed; it is plausible for MCCC to follow an established written policy **and** adopt other policies as necessary to ensure the safety of all inmates. Defendants also did not provide the Court with a copy of the written policy for evaluation. Without explaining the probative value of this written policy as to this case, the Court cannot consider it.

under the de-facto policy.  In other words, although evidence shows that Defendants knew that the three inmates were members of the Crips, and that Plaintiff was a member of "Rollins 60" while White was a member of "52 Hoover," there was simply no evidence that there were signs of hostility between any members *within* the Crips, let alone indications that such hostility existed between Plaintiff, White, and Inman.  As such, there was no information available to demonstrate, or put Defendants on notice, that there was a substantial risk of harm prior to the attack on Plaintiff.  Consequently, Plaintiff has failed to create a genuine issue of material fact on this element.

As to the second element of the failure-to-protect claim, the Court also finds that Plaintiff has failed to create a genuine issue of material fact that Defendants knew of and disregarded a substantial risk of harm.  There is no evidence to show that Defendants knew that (1) White and Inman would use hot coffee as a weapon, (2) staffing was inadequate to reasonably respond to any attacks within MCCC, or (3) sets within the Crips were hostile to each other, particularly between "Rollins 60" and "Hoover 52."  Furthermore, as the Court explained above, there is also no evidence that Defendants knew about any prior incidents of harm in circumstances similar to the one here.  Indeed, Plaintiff himself admits that "[a]lliances can quickly shift and gang members change sets and even hide their gang sets."  (Response at 1; *see also* Motion, Ex. F (Deposition of Lt. Santitoro), at 35:1-10.)  Under these facts, Defendants cannot be expected to be on notice of any substantial risk of harm within such an ever-changing and possibly *hidden* set of allegiances.  Accordingly, Plaintiff has not sufficiently established the knowledge element.  Therefore, because Plaintiff has failed to support either elements of a failure-to-protect claim, the Court finds summary judgment appropriate on this claim.

To the extent that Plaintiff is asserting a *Monell* claim against the County, Plaintiff's claim necessarily fails because the Court has not found a constitutional violation in the first place.  *See*

*Badillo v. Amato*, No. 13–1553 (FLW), 2014 WL 314727, at *11 (D.N.J. Jan. 28, 2014) ("[S]ince there was no [constitutional] violation in the first place, there can be no claims against the municipality for deprivation [under *Monell*]"); *Mulholland v. Cnty. of Berks*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) (finding that "if a municipal employee inflicted no constitutional injury, it is inconceivable that the municipality could be liable") (internal quotations and citations omitted).[3]

### B. State Law Claims

Although the Motion does not address Plaintiff's state law claims, the Court nonetheless address its supplemental jurisdiction over Plaintiff's state law claims here. 28 U.S.C. § 1367(c)(3) permits the district court, within its discretion, to decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction." Indeed, the Third Circuit has used even stronger language to describe the court's obligations under the provision. "The power of the court to exercise pendent jurisdiction, though largely unrestricted, requires, at a minimum, a federal claim of sufficient substance to confer subject matter jurisdiction on the court." *City of Pittsburgh Comm'n on Human Relations v. Key Bank USA*, 163 F. App'x 163, 166 (3d Cir. 2006) (quoting *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 195 (3d Cir. 1976)). "[I]f it appears that all federal claims are subject to dismissal, the court should not exercise jurisdiction over remaining claims unless 'extraordinary circumstances' exist." *Id.* "'[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'" *Id.* (quoting *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000)).

---

[3] The Court need not address whether qualified immunity is an affirmative defense, since the Court does not find that there was a constitutional violation.

In light of the fact that (1) the parties have only conducted limited discovery; (2) a trial has not occurred; (3) all remaining claims are state law based; and (4) no extraordinary circumstances exist to compel the Court to exercise jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. Therefore, the Court dismisses these claims without prejudice. Plaintiff is hereby advised that § 1367(d) permits a tolling of 30 days on the statute of limitations period of Plaintiff's state law claims after the Court's dismissal here, and failure to assert those claims in state court within that 30 days may result in the claims being time-barred.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff's § 1983 claims against all Defendants are **DISMISSED WITH PREJUDICE**, and the remaining state law claims are **DISMISSED WITHOUT PREJUDICE**.  Plaintiff may file his state law claims in state court within 30 days of date of the Order accompanying this Opinion.


                                              /s/ Freda L. Wolfson
                                         **Freda L. Wolfson, U.S.D.J.**

Dated: February 10, 2015